UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DAVID CZAPIEWSKI,

                              Plaintiff,

          v.                                          Case No. 25-cv-1356-pp

MARCUS KING, *et al.*,

                              Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING AS MOOT PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO PAY INITIAL PARTIAL FILING FEE AND TO USE RELEASE ACCOUNT (DKT. NO. 8), GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT (DKT. NO. 12), SCREENING PROPOSED SECOND AMENDED COMPLAINT UNDER 28 U.S.C. §1915A (DKT. NO. 12-1) AND DENYING AS UNNECESSARY PLAINTIFF'S MOTION FOR SCHEDULING CONFERENCE (DKT. NO. 13)**

Plaintiff David Czapiewski, who is incarcerated at Green Bay Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, denies as moot his motion for an extension of time to pay the initial partial filing fee and to use his release account, dkt. no. 8, grants his motion for leave to file a second amended complaint, dkt. no. 12, and screens his proposed second amended complaint, dkt. no. 12-1.

**I.      Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h).

1

The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On September 16, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $19.72. Dkt. No. 7. The court received that fee on October 14, 2025. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order. On October 1, 2025, the court received from the plaintiff a motion for an extension of time to pay the initial partial filing fee and request for leave to pay the initial fee from his release account. Dkt. No. 8. Because the court received the initial partial filing fee on October 14, 2025, it will deny these motions as moot.

## II. Screening the Second Amended Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

B.    The Plaintiff's Allegations

In the proposed second amended complaint, the plaintiff alleges that he is incarcerated at Green Bay Correctional Institution. Dkt. No. 12-1 at ¶6. He is suing Marcus King and Cushings, supervisors in Green Bay's "RSHU" (Restricted Status Housing Unit) and Amy Woolf, a crisis intervention worker at Green Bay. Id. at ¶¶7-9.

The plaintiff alleges that during the events described in the complaint, he was severely mentally ill, having been diagnosed with schizoaffective disorder and an unspecified anxiety disorder. Id. at ¶11. He says that he has "a propensity to harm himself by banging his head, cutting himself with a razor, and diving off of the sink toilet headfirst into the ground and biting himself." Id. at ¶12.

At 6:35 p.m. on an unspecified date, the plaintiff allegedly heard incarcerated individuals yell that another incarcerated individual said he was cutting himself. Id. at ¶13. The plaintiff states that about ten minutes later, staff would not answer the emergency call button he pressed in his cell so he started kicking his cell door as hard as he could to gain the staff's attention so they could respond to the individual harming himself. Id. at ¶14. The plaintiff alleges that at 6:55 p.m., King came to his door and said that the plaintiff was going on control status. Id. at ¶15. The plaintiff allegedly asked King if he was going to check on the incarcerated individual down the hall who was cutting himself. Id. at ¶17. He says that King responded by asking the plaintiff if the plaintiff was going to cuff up. Id. at ¶ 18. The plaintiff alleges that he became

4

depressed about going on control status, and he responded to King, "no, I am Suicidal." Id. at ¶19. While King was still at his cell door, the plaintiff allegedly covered his window with cardboard and began banging his head against the door until he had a large contusion and swollen bump on his head. Id. at ¶20. King allegedly walked away. Id. at ¶21.

The plaintiff states that he put blood on the window and when King returned, King told the plaintiff to uncover his window. Id. at ¶22. The plaintiff states that he partially uncovered his window and banged his head so King could see his injury and that he was harming himself, but King walked away again. Id. at ¶23. The plaintiff states that he covered his window again and dove headfirst off his toilet which caused pain on the left side of his head. Id. at ¶24. He states that he then took the cardboard down and King returned. Id. at ¶25. The plaintiff allegedly asked King if he was going to put the plaintiff on observation status. Id. at ¶26. King allegedly said that he called Woolf and she said that the plaintiff's actions did not meet the criteria for clinical observation placement. Id. at ¶27. The plaintiff alleges that "[a]fter reading [his] file and talking to Woolf there was indication that King gave an inaccurate disruption [sic] of the events, actions and injuries and [the plaintiff's] state of mind during this incident." Id. at ¶28.

King allegedly walked away and when he returned at 7:05 p.m., he asked the plaintiff if the plaintiff would like to see the health services unit for his injuries. Id. at ¶29. The plaintiff alleges that he said no because he thought

5

there was a no contact order between him and King, and he feared that King would have him charged again for this emergency. Id. at 30.

The plaintiff alleges that during orientation at Green Bay, incarcerated individuals receive pamphlets stating that they should inform staff when an incarcerated individual is suicidal or self-harming. Id. at ¶31. The plaintiff alleges that King singled him out even though he was not the only one kicking the door, trying to get help for the incarcerated individual who was harming himself. Id. at ¶32.

The plaintiff alleges that he submitted a health service request to be seen by a nurse for the cuts and the large contusion on his forehead. Id. at ¶33. The plaintiff says that after King left at 10:00 p.m. and placed the plaintiff on control status (thirty-minute wellness checks) instead of observation status (fifteen-minute wellness checks), the plaintiff asked the acting supervisor if he could see the nurse, but the acting supervisor said no because King already had given the plaintiff the opportunity to do so. Id. at ¶34. The plaintiff states that he became more depressed and dove off the sink again, this time hurting his knees and neck. Id. at ¶35.

The plaintiff alleges that Cushing ultimately decided that the plaintiff could not see the nurse even though the plaintiff reported that he had dizzy spells and was falling down. Id. at ¶36. The plaintiff allegedly stayed awake all night because he feared that a concussion could put him in a sleep-induced coma from brain trauma. Id. at ¶37. He alleges that the next morning he saw a nurse who took measurements of his injury. Id. at ¶38.

6

The plaintiff alleges that King issued him an "unnecessary and unjustified" conduct report because the plaintiff had engaged in protected speech by trying to gain the attention of staff to report the emergency of the incarcerated individual who was self-harming and because the plaintiff opted to go on observation status rather than control status. Id. at ¶40. The plaintiff states that he was found guilty of the charges contained in the conduct report. Id. at ¶41. The plaintiff alleges that King was deliberately indifferent to his physical safety by reporting inaccurate information to Woolf to stop her from doing a full assessment on self-harm or suicide. Id. at ¶43. The plaintiff also asserts that King issued the conduct report in retaliation for the plaintiff exercising his right to express his need for observation and that the other incarcerated individual needed help. Id. The plaintiff says that King did not respond reasonably to the plaintiff harming himself, which caused the plaintiff to suffer injuries. Id.

The plaintiff maintains that Woolf was deliberately indifferent to his mental and physical safety by not placing him on observation status for his safety when King reported that the plaintiff had harmed himself. Id. at ¶44. The plaintiff asserts that Cushings violated his constitutional rights by denying him medical care when Cushings denied the plaintiff access to the HSU when the plaintiff asked to be seen for his serious medical need regarding recent head trauma from self-harming. Id. at ¶45.

For relief, the plaintiff seeks declaratory relief, injunctive relief and monetary damages. Id. at p. 11.

C.     Analysis

Failure to provide protection from suicide or self-harm constitutes an Eighth Amendment violation if deliberate indifference by prison officials to an incarcerated individual's welfare effectively condones the harm by allowing it to happen. Eagen v. Dempsey, 987 F.3d 667, 693-94 (7th Cir. 2021) (citations omitted). To state a claim under the Eighth Amendment, the plaintiff must allege that (1) "he presented an objectively serious medical need;" and (2) "a defendant [ ] responded [ ] with deliberate indifference, thereby resulting in some injury." Lord v. Beahm, 952 F.3d 902, 904 (7th Cir. 2020) (citing Petties v. Carter, 836 F.3d 722, 727-28 (7th Cir. 2016)). A medical condition is objectively serious if it is "so obvious that even a lay person would perceive the need for a doctor's attention." See Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011). "A genuine risk of suicide or self-harm constitutes an objectively serious medical condition." Whitaker v. Dempsey, 144 F.4th 908, 916 (7th Cir. 2025) (citing Lisle v. Welborn, 933 F.3d 705, 716 (7th Cir. 2019) (suicide); Miranda v. County of Lake, 900 F.3d 335, 349 (7th Cir. 2018) (self-harm)). Regarding the second prong, a defendant responds with deliberate indifference when he or she "actually knew of and disregarded a substantial risk of harm." Petties, 836 F.3d at 728. "This requires 'more than mere or gross negligence, but less than purposeful infliction of harm.'" Lisle, 933 F.3d at 716-17 (quoting Matos v. O'Sullivan, 335 F.3d 553, 557 (7th Cir. 2003)).

The plaintiff may proceed on an Eighth Amendment claim against King in his individual capacity based on allegations that King walked away from the

8

plaintiff's cell after the plaintiff said that he was suicidal and later harmed himself. The plaintiff also may proceed on an Eighth Amendment claim against King based on allegations that King gave inaccurate information to Woolf regarding the extent of the plaintiff's threats and self-harm, which resulted in Woolf not recommending that the plaintiff transfer to observation status. The plaintiff may proceed on an individual-capacity Eighth Amendment deliberate indifference claim against Cushings based on allegations that Cushings did not allow the plaintiff to see medical staff for his self-harm injuries.

The plaintiff alleges that King issued him a conduct report in retaliation for the plaintiff engaging in protected speech by trying to gain the attention of staff to report the emergency of the incarcerated individual who was self-harming and because the plaintiff opted to go on observation status rather than control status. The plaintiff states that King singled him out from other incarcerated individuals who were banging on their cell doors trying to gain staff members' attention. To plead a retaliation claim, the plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." Perez v. Fenoglio, 792 F.3d 768, 783 (7th Cir. 2015) (quoting Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)). The plaintiff has made those allegations; he may proceed on a retaliation claim against King in his individual capacity.

9

The plaintiff has not stated a claim against Woolf because he alleges that she received inaccurate information about his condition from King. According to the plaintiff, King provided Woolf inaccurate information about the events, actions and injuries surrounding the plaintiff's self-harm, so she cannot be liable for saying that he did not meet the criteria to be sent to observation status. The court will dismiss Woolf as a defendant.

### III. Motion for Scheduling Conference (Dkt. No. 13)

On April 21, 2026, the court received from the plaintiff a motion for a scheduling conference. Dkt. No. 13. The plaintiff states that he wants the court to set a scheduling conference because he has three other cases in progress; he wants the parties to be able to "confer on a mutual settlement agreement" and he wants to learn whether the defendants "concur with a preliminary injunction and/or TRO against defendants." Id.

The plaintiff's motion is unnecessary. The court does not calendar scheduling conferences in §1983 cases filed by incarcerated plaintiffs. At this point, the second amended complaint has not been served on the defendants, so they have not had the opportunity to answer. Once the court receives their answers, the court will issue a scheduling order. The court advises the plaintiff to wait until a lawyer has filed a notice of appearance on behalf of the defendants. The plaintiff may, if he wants to, contact that lawyer and discuss the issues he mentioned in his motion. At that point, if the plaintiff wants the court to calendar a status conference, he may file a motion asking the court to

do so. The court will deny unnecessary the plaintiff's motion for a scheduling conference.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES AS MOOT** the plaintiff's motion for extension of time to pay initial partial filing fee and to use release account. Dkt. No. 8.

The court **GRANTS** the plaintiff's motion for leave to file second amended complaint. Dkt. No. 12. The court **DIRECTS** the clerk's office to separately docket the proposed second amended complaint, dkt. no. 12-1, as the operative complaint.

The court **DISMISSES** defendant Amy Woolf.

The court **DENIES** as unnecessary the plaintiff's motion for scheduling conference. Dkt. No. 13.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the second amended complaint and this order to the Wisconsin Department of Justice for service on defendants King and Cushings. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the second amended complaint within sixty (60) days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$330.28** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an

11

amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Green Bay Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

---

[1] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin, this 20th day of May, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

13